Eric H. Gibbs (SBN 178658)
ehg@classlawgroup.com
Michael Schrag (SBN 185832)
mls@classgrouplaw.com
Andre M. Mura (SBN 298541)
amm@classlawgroup.com
Karen Barth Menzies (SBN 180234)
kbm@classlawgroup.com
Amy M. Zeman (SBN 273100)
amz@classlawgroup.com
Steve Lopez (SBN 300540)
sal@classlawgroup.com
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (510) 350-9700
Facsimile:  (510) 350-9701

*Attorneys for Plaintiff and Proposed Class*

*[Additional counsel on signature page]*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OAKLANDISH, LLC,<br><br>              Plaintiff,<br><br>     v.<br><br>SENTINEL INSURANCE COMPANY LTD.,<br><br>              Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

Plaintiff Oaklandish, LLC, individually and on behalf of all others similarly situated, files suit against Defendant Sentinel Insurance Company Ltd. and alleges as follows:

### INTRODUCTION

1. Since March 19, 2020, California's "Stay at Home" order has instructed all 40 million California residents to remain at home, with certain exceptions. Though lifesaving, this mandate, which remains in place, ends in-person shopping at California retailers and remains in place to this day, though localities are permitted to reopen if they meet certain conditions for a variance from the statewide order. This is not merely causing severe financial distress for retailers and their employees; such closures threaten the viability of California's retail industry.

2. Plaintiff's stores in Oakland, California are among the thousands that were forced to cease in-person shopping as part of the Stay at Home order. Oaklandish and many California retailers—none of whom bear fault for statewide closures—were responsible business stewards, thus paying for business interruption insurance to protect against a situation like this.

3. But insurance companies operating in California are categorically denying claims from retailers arising from California's mandated interruption of business services. Those denials are often made with little or no investigation and without due regard for the interests of insureds.

4. Indeed, form letters denying coverage for such losses appear to rest on crabbed readings of coverage language and overbroad readings of exclusions. That gets insurance law exactly backwards—and raises the specter of bad-faith denials.

5. Oaklandish's experience is no different. It has dutifully followed California's mandates. Facing serious financial harm, it has filed a claim with Sentinel for business interruption coverage.

6. Defendant swiftly denied the claim. Though its reasons are cursory, the denial appears to be based on an unreasonable reading of its policy, which tracks

form policies issued throughout California on a take-it-or-leave-it basis.

7. That leaves Oaklandish in financial straits—precisely the situation it sought to avoid when it obtained coverage for business interruptions.

8. Oaklandish and other retailers bought full-spectrum, comprehensive insurance for their *businesses* – not just for tangible damage to their premises and equipment. And for good reason. Insurance coverage is important, if not vital, particularly for small businesses.

9. Oaklandish and other California retailers reasonably believed they had comprehensive coverage that would apply to business interruptions under circumstances like these, where they have done everything right to protect their businesses and the public. But insurance companies like Sentinel are cutting those lifelines – despite having pocketed significant premiums for Plaintiff's policy.

10. Plaintiff thus brings this action, on behalf of itself and other California retailers, seeking declaratory relief, insurance coverage owed under Sentinel's policy, and damages.

**PARTIES**

11. Plaintiff Oaklandish, LLC is a limited liability company formed under the laws of California. Its principal place of business is in Oakland, California.

12. Defendant Sentinel Insurance Company Ltd. is a company organized under the laws of Connecticut with its principal place of business in Hartford, Connecticut. At all relevant times, Sentinel operated in California. Sentinel is an affiliate of insurer The Hartford.

**JURISDICTION AND VENUE**

13. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant.

14. This Court has personal jurisdiction over Defendant, because Defendant conducts business in Oakland, California.

15. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the instant action occurred in Oakland, California.

### INTRADISTRICT ASSIGNMENT

16. Assignment to the Oakland or San Francisco Division would be proper because Defendant has conducted business there and a substantial part of the events or omissions which give rise to the claims alleged herein occurred in Alameda County.

### FACTUAL BACKGROUND

17. In January 2020 early media reports documented an outbreak of a novel strain of coronavirus – COVID-19 – in Wuhan, China. By late January, it was generally understood in the scientific and public health communities that COVID-19 was spreading through human-to-human transmission and could be transmitted by asymptomatic carriers.

18. On January 30, 2020, reports of the spread of COVID-19 outside China prompted the World Health Organization to declare the COVID-19 outbreak a "Public Health Emergency of International Concern."

19. On March 11, the World Health Organization declared COVID-19 a global health pandemic based on existing and projected infection and death rates and concerns about the speed of transmission and ultimate reach of this virus.

20. Public health officials have recognized for decades that non-pharmaceutical interventions (NPIs) can slow and stop the transmission of certain diseases. Among these are screening and testing of potentially infected persons; contact tracing and quarantining infected persons; personal protection and prevention; and social distancing. Social distancing is the maintenance of physical space between people. Social distancing can be limited – *e.g.*, reducing certain types

of conduct or activities like hand-shaking – or large-scale – *e.g.*, restricting the movements of the total population.

21. A lack of central planning, shortages of key medical supplies and equipment, and the unfortunate spread of misinformation and disinformation about the risks of COVID-19 has led to widespread confusion, unrest, and uncertainty regarding the likely trajectory of this pandemic and the appropriate counter-measures necessary to mitigate the damage it could potentially cause.

22. Beginning in late February, public health officials began advising various governments around the world that one of the most disruptive NPIs – population-wide social distancing – was needed to stop the transmission of COVID-19. Suddenly schools, offices, public transit, restaurants, bars, music venues, and shops -- densely occupied spaces, heavily traveled spaces, and frequently visited spaces – were likely to become hot-spots for local transmission of COVID-19.

23. By mid-March, that advice was being implemented by state and local governments across the United States. In many respects, California led the way, becoming one of the first states to order widespread closures.

24. California's Governor Gavin Newsom, on March 12, 2020, issued a statewide directive known as the Safer at Home order: "All residents are to heed any orders and guidance of state and local public health officials, including but not limited to the imposition of social distancing measures, to control the spread of COVID-19."

25. Following closely on the heels of local closure orders, including in Alameda County, on March 19, 2020, the Governor issued another series of mandates (the Stay at Home Order)—which remain in effect to date, subject to approved county variances—requiring retailers to cease in-person services, though curbside sales or by delivery are now permitted.

**PLAINTIFF'S EXPERIENCE**

26. Plaintiff operates a fashion line called Oaklandish with several retail

stores located in Oakland, California. Oaklandish sells clothing and accessories showcasing symbols of Oakland.

27. Oaklandish has complied with all applicable orders of California state and local authorities. Compliance with those orders has caused direct physical loss of Oaklandish's insured property in that its business locations and its equipment, furnishings and other business personal property, have been made unavailable, inoperable, useless and/or uninhabitable; and its functionality has been severely reduced if not completely or nearly eliminated.

28. The impact of these orders is felt not simply in their direct application to Oaklandish's operations, but also in the damage caused to neighboring businesses and properties.

29. Even when California relaxes or revokes its mandates, Oaklandish will encounter continued loss of business income due to those orders because, in issuing those orders, government officials have stated that densely occupied public spaces are dangerously unsafe, and continuing to operate the shop in the same manner as before could expose Oaklandish to the risk of contaminated premises as well as exposing customers and workers to transmission and infection risks.

30. Plaintiff purchased comprehensive commercial liability and property insurance from Defendant to insure against risks the business might face. Such coverage includes business income coverage for the loss, as well as additional "civil authority" coverage. Once triggered, the policy pays actual losses sustained for the business income and extra expense coverage.

31. To date, Plaintiff has paid all of the premiums required by Defendant to keep its policy in full force. These premiums have totaled many thousands to date.

32. On or about April 2020, Plaintiff reported a loss of business income as of March 2020, under Policy 57 SBA BI1262 SC.

33. On or about April 20, 2020, Defendant denied Plaintiff's claim for coverage. In a cursory denial letter, Defendant took the position that "since COVID-19

did not cause property damage at your place of business or in the immediate area, this business income loss is not covered." Sentinel further stated that "[e]ven if COVID-19 did cause damage, it is excluded from the policy."

34. Defendant's denial letter, on information and belief, appears to be a form letter sent in response to business interruption claims arising from California's Stay at Home orders.

35. Defendant's denial is contrary to the terms and conditions of the policy and applicable law, which gives effect to plain language, construes coverage agreements broadly, narrowly construes exclusions and construes ambiguity in favor of coverage. Insurers have the burden of proving the applicability of exclusions.

36. Defendant's denial of coverage breached its obligation and responsibility to provide coverage available through the policy to Plaintiff due to its covered loss of business income.

37. As a result, Defendant's denial of coverage and breach of the insurance policy it issued, Plaintiff has suffered and will continue to suffer damages.

38. A declaratory judgment determining that the coverage provided under the policy and an order that such coverage is owed will prevent Plaintiff and Class members from being wrongfully left without vital coverage acquired to ensure the survival of its businesses in these circumstances. As a result of the Stay at Home orders, Plaintiff has incurred and continues to incur a substantial loss of business income and additional expenses covered under the policy.

## CLASS ALLEGATIONS

39. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained above.

40. Business insurance policies purchased by small businesses like Plaintiff are not individually negotiated. At most, the prospective policyholder may elect to add specialized coverage options to a basic business insurance policy. But the substantive terms are set unilaterally by the insurer.

41. Plaintiff's policy includes common terms and phrases widely used by the insurance industry. The insurance industry typically hews closely to standardized insurance policy forms in addressing property and liability risks, and Defendant did so here.

42. As the impact of the COVID-19 pandemic is emerging, leading insurance industry associations have publicly stated that such standard business insurance policies do not provide any coverage for the business losses related to public health orders like the Stay at Home orders imposed by California. The denial letter received by Plaintiff—issued without any investigation at Plaintiff's premises and shortly after a claim was filed—appears to be a form letter that, on information and belief, is sent automatically to any such business with comprehensive business insurance that files a claim at this time.

43. Pursuant to Fed. R. Civ. P. 23(b)(2), 23(b)(3), and 23(c)(4), Plaintiff brings this action on behalf of itself and the following Class (the "Class"): All retailers in California that purchased comprehensive business insurance coverage from Defendant which includes coverage for business interruption, filed a claim for lost business income following California's Stay at Home order, and were denied coverage by Defendant.

44. Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

45. This action has been brought and may properly be maintained as a class action as it satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements.

46. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded, divided into

1  subclasses, or modified in any other way.

2  47.  Although the precise number of members of the Class is unknown and
3  can only be determined through appropriate discovery, Plaintiff believes, and on that
4  basis alleges, that the members of the proposed Class are so numerous that joinder of
5  all members would be impracticable.  There are tens of thousands of retailers in
6  California which are governed by the Stay at Home order and attendant statewide
7  restrictions, and public reporting reveals that many have filed for coverage but have
8  been denied.

9  48.  Questions of law and fact common to the Class exist that predominate
10 over questions affecting only individual members, including *inter alia*:

   a.  Whether Defendant's comprehensive business insurance policies cover claims for lost business income under the circumstances present here;

   b.  Whether the terms, definitions, and exclusions that Defendant has relied on to deny coverage reasonably can be construed in the manner that Defendant claims, or are otherwise unenforceable as a basis for Defendant's denials or, instead, must be construed to provide coverage under California law;

   c.  Whether the virus exclusion endorsement excludes coverage for the Stay at Home order;

   d.  Whether Defendant breached the implied covenant of good faith and fair dealing in its handling of the claim;

   e.  Whether Defendant acted in bad faith in denying claims for lost business income without investigation or due consideration of those claims; and

   f.  Whether the declaratory judgment sought is appropriate.

49. Plaintiff is a member of the putative Class.  The claims asserted by the Plaintiff in this action are typical of the claims of the members of the putative Class as

the claims arise from the same course of conduct by Defendant and the relief sought is common.

50. Plaintiff will fairly and adequately represent and protect the interests of the members of the putative Class, as its interests coincide with, and are not antagonistic to, the other members of the Class. Plaintiff has retained counsel competent and experienced in both consumer protection, insurance coverage, and class-action litigation.

51. Certification of the Class is appropriate pursuant to Fed. R. Civ. P. 23 (b)(3) because:

   a. Questions of law or fact common to the respective members of the Class predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims including consistency of adjudications. Absent a class action it would be highly unlikely that the members of the Class would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed the expected recovery.

   b. A class action is a superior method for the adjudication of the controversy in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense, and the burden of the courts that individual actions would create.

   c. The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that

might be argued with regard to the management of the class action.

52. The Class should also be certified pursuant to Fed. R. Civ. P. 23(b)(2) because:

    a. The prosecution of separate actions by the individual members of the proposed class would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Defendant.

    b. The prosecution of individual actions could result in adjudications, which as a practical matter, would be dispositive of the interests of non-party class members or which would substantially impair their ability to protect their interests.

    c. Defendant has acted or refused to act on grounds generally applicable to the proposed Class, thereby making appropriate final and injunctive relief with respect to the members of the proposed Class as a whole.

53. Likewise, particular issues are appropriate for certification under Fed. R. Civ. P. 23(c)(4) because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

    a. Whether the comprehensive business insurance policies issued by Defendant covers class members' direct physical loss of property and lost business income following California's Stay at Home order;

    b. Whether the coverages for direct physical loss of property and lost business income provided by the comprehensive business insurance policies are precluded by exclusions or other limitations in those policies;

      c.    Whether Defendant breached contracts by denying comprehensive business insurance coverage to Plaintiff and Class members;

      d.    Whether summary denial of claims for direct physical loss of property and lost business income, including by invoking an exclusion for viruses, without any investigation or inquiry constitutes bad faith and therefore a breach of the implied covenant of good faith and fair dealing to act in good faith and with reasonable efforts to perform their contractual duties and not to impair the rights of other parties to receive the rights, benefits, and reasonable expectations under the contracts;

      e.    Whether the handling of the claim with the knowledge that Defendant would not provide coverage for business interruptions associated with public health measures such as California's Stay at Home order constitutes a breach of the implied covenant of good faith and fair dealing.

      f.    Whether Plaintiff and Class members are entitled to actual damages and/or injunctive relief as a result of Defendant's wrongful conduct.

## FIRST CAUSE OF ACTION

### Declaratory Judgment

54. Plaintiff re-alleges the paragraphs above as if fully set forth herein.

55. Plaintiff purchased a comprehensive business insurance policy from Defendant.

56. Plaintiff paid all premiums required to maintain its comprehensive business insurance policy in full force.

57. The comprehensive business insurance policy includes provisions that provide coverage for the direct physical loss of or damage to the premises as well as

actual loss of business income and extra expenses sustained during the suspension of operations as a result of such loss or damage.

58. On or about March 19, California issued the Stay at Home order, mandating that all Californians remain at home, with certain exceptions. This mandate required retailers to cease all non-essential services. This mandate also applied to neighboring businesses, thus causing widespread closures surrounding Plaintiff's business premises.

59. As a direct result of this mandate, Plaintiff has suffered direct physical loss of its covered property because it lost some or all of its functionality and/or became inaccessible, inoperable, useless and/or uninhabitable, resulting in substantial loss of business income.

60. These losses are insured losses under Plaintiff's comprehensive business insurance policy including business income and extra expense coverage.

61. Defendant cannot meet its burden of proving that there are applicable, enforceable exclusions or limitations of coverage in the insurance policies that preclude coverage for these losses.

62. WHEREFORE, Plaintiff seeks a declaration for itself and similarly situated retailers that its business income losses are covered and not precluded by exclusions or other limitations in its comprehensive business insurance policy.

### SECOND CAUSE OF ACTION

### Breach of Contract

63. Plaintiff re-alleges the paragraphs above as if fully set forth herein.

64. Plaintiff purchased a comprehensive business insurance policy from Defendant to insure against all risks (unless specifically excluded) a business might face. This policy was a binding contract that afforded Plaintiff comprehensive business insurance under the terms and conditions of the policy.

65. Plaintiff met all or substantially all of its contractual obligations, including paying all the premiums required by Defendant.

66. On or about March 19, California issued the Stay at Home order, mandating that all Californians remain at home, with certain exceptions. This mandate required retailers, including that owned by Plaintiff, to cease all in-person services. This mandate also applied to neighboring businesses, thus causing widespread closures surrounding Plaintiff's business premises.

67. Beginning on March 16, 2020, and continuing through the date of the filing of this Complaint, Plaintiff suffered the direct physical loss of property and lost business income alleged above—losses which were covered under the comprehensive business insurance policy purchased from Defendant.

68. Defendant cannot meet its burden of proving that there are applicable, enforceable exclusions or limitations of coverage in Plaintiff's comprehensive business insurance policy that precludes coverage.

69. Defendant breached its contracts by denying comprehensive business insurance coverage to Plaintiff and Class members.

70. As a direct and proximate result of Defendant's denial of comprehensive business insurance coverage to Plaintiff and Class members, Plaintiff and members of the Class have suffered damages.

71. WHEREFORE, Plaintiff seeks: (a) a judgment for itself and similarly situated retailers that Defendant breached its contracts with Plaintiff and Class members; and (b) corresponding damages for that breach.

### THIRD CAUSE OF ACTION

**Breach of Implied Covenant of Good Faith and Fair Dealing**

72. Plaintiff re-alleges the paragraphs above as if fully set forth herein.

73. Plaintiff and Class members contracted with Defendant to provide it with comprehensive business insurance to insure against all risks (unless specifically excluded) a business might face.

74. This contract was subject to an implied covenant of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform

their contractual duties—both explicit and fairly implied—and not to impair the rights of other parties to receive the rights, benefits, and reasonable expectations under the contracts. These included the covenant that Defendant would act fairly and in good faith in carrying out its contractual obligations to provide Plaintiff and Class members with comprehensive business insurance.

75. Defendant breached the implied covenant of good faith and fair dealing by:

 a. Selling policies that appear to provide liberal coverage for loss of property and lost business income with the intent of interpreting undefined or poorly defined terms, undefined terms, and ambiguously written exclusions to deny coverage under circumstances foreseen by Defendant;

 b. Denying coverage for loss of property and lost business income unreasonably, and without proper cause, by applying undefined, ambiguous, and contradictory terms contrary to applicable rules of policy construction and the plain terms and purpose of the policy;

 c. Denying Plaintiff's claim for loss of property and loss of business income without conducting a fair, unbiased and thorough investigation or inquiry;

 d. Failing to provide a written explanation of the legal and factual basis for its denials; and

 e. Compelling policyholders, including Plaintiff, to initiate litigation to recover policy benefits to which they are entitled.

76. Plaintiff met all or substantially all of its contractual obligations, including by paying all the premiums required by Defendant.

77. Defendant's failure to act in good faith in providing comprehensive business insurance coverage to Plaintiff denied Plaintiff the full benefit of its bargain.

78. Accordingly, Plaintiff has been injured as a result of Defendant's breach of the covenant of good faith and fair dealing and is entitled to damages in an amount to be proven at trial.

79. WHEREFORE, Plaintiff seeks: (a) a judgment for itself and similarly situated retailers that Defendant has breached the covenant of good faith and fair dealing implied in its contract with Plaintiff and other Class members; and (b) corresponding damages for that breach.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests, on behalf of itself and the Class, that the Court enter a judgment awarding the following relief:

a. An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing Gibbs Law Group LLP and Cohen Milstein Sellers & Toll PLLC, as Class Counsel, and finding that Plaintiff is a proper representative of the Class requested herein.

b. A declaration that Plaintiff's and Class members' losses are covered under Defendant's comprehensive business insurance policy;

c. Plaintiff also requests damages, attorney's fees and costs, and such other and further relief as is just and proper as compensation for Defendant's breach of contract and breach of the implied covenant of good faith and fair dealing.

### JURY DEMAND

Plaintiff demands a trial by jury for all issues so triable under the law.

Dated: July 20, 2020

Respectfully submitted,

**GIBBS LAW GROUP LLP**

By: */s/ Eric H. Gibbs*

Eric H. Gibbs
ehg@classlawgroup.com
Michael Schrag
mls@classgrouplaw.com
Andre M. Mura
amm@classlawgroup.com
Karen Barth Menzies
kbm@classlawgroup.com
Amy M. Zeman
amz@classlawgroup.com
Steve Lopez
sal@classlawgroup.com
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (510) 350-9700
Facsimile:  (510) 350-9701

Andrew N. Friedman (*pro hac vice forthcoming*)
Victoria S. Nugent (*pro hac vice forthcoming*)
Julie Selesnick (*pro hac vice forthcoming*)
Geoffrey Graber (SBN 211547)
Eric Kafka (*pro hac vice forthcoming*)
Karina G. Puttieva (SBN 317702)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
afriedman@cohenmilstein.com
vnugent@cohenmilstein.com
jselesnick@cohenmilstein.com
ggraber@cohenmilstein.com
ekafka@cohenmilstein.com
kputtieva@cohenmilstein.com

*Attorneys for Plaintiff and Proposed Class*